IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TINA MARTIN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-1167-B-BK |
| | § | |
| CAROLYN COLVIN, Acting | § | |
| Commissioner of Social Security, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on the parties' cross-*Motions for Summary Judgment*, Doc. 14; Doc. 15. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* be **GRANTED**, Defendant's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

**I. BACKGROUND**[1]

A.   <u>Procedural History</u>

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). In January 2013, Plaintiff filed for SSI and DIB, claiming that she had been disabled since December 2011. Doc. 11-6 at 2-11. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 11-3 at 2, 14; Doc. 11-5 at 5, 16.

---

[1] The following background comes from the transcript of the administrative proceedings, which is located at Doc. 11.

B.      **Factual Background**

Plaintiff was born on September 30, 1953, and was 58 years old on the date of her claimed disability onset.  Doc. 11-3 at 34.  She has a high school education and previously worked as a personnel clerk, background investigator, and administrative clerk.  Doc. 11-3 at 36, 38-39, 50.  According to her medical records, Plaintiff began treatment with Dr. David Turner, M.D. as early as November 2010 for hypertension, insomnia, and depression.  Doc. 11-8 at 29. In December 2011, Dr. Turner assessed Plaintiff with a number of impairments, including depression.  Doc. 11-8 at 24.  In June 2012, she was again assessed with depression, among other things, and Dr. Turner prescribed her Fluoxetine (Prozac).  Doc. 11-8 at 22.  In September 2012, Plaintiff returned to Dr. Turner complaining of stress, fatigue, anxiety, and depression, and Dr. Turner observed that she exhibited a depressed, anxious mood.  Doc. 11-8 at 8-9.  Plaintiff visited Dr. Turner again in December 2012 to follow up on her blood pressure, cholesterol, and thyroid condition and she continued to endorse symptoms of anxiety, depression, and fatigue. Doc. 11-8 at 11.  Dr. Turner again assessed Plaintiff with depression and renewed her prescriptions for Fluoxetine and Klonopin (Clonazepam).[1]  Doc. 11-8 at 13.  Visits throughout 2013 resulted in similar assessments.  Doc. 11-8 at 16; Doc. 11-9 at 3, 12.

In May 2013, Dr. Turner completed a mental health checklist in which he indicated that he was treating Plaintiff for a mental impairment and had recommended her for treatment.  Doc. 11-8 at 49.  Dr. Turner stated that Plaintiff's mental condition did not impose more than minimal limitations, but she did have a current functional limitation in that she should avoid stress.  Doc. 11-8 at 49.

---

[1] Clonazepam is a benzodiazepine used to treat anxiety and panic attacks, among other things. *See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682279.html (last visited Dec. 16, 2015).

In March and April 2013, Plaintiff sought treatment from Dr. Cindy Corpier, M.D., for treatment of her kidney disease.  Doc. 11-8 at 38, 43.  In addition to her physical problems, Plaintiff was noted as having depression and anxiety, and Dr. Corpier advised her to continue taking her medications to treat those conditions.  Doc. 11-8 at 39, 44.  In October 2013, Plaintiff returned to Dr. Corpier, who again noted a number of active problems, including chronic kidney disease, anxiety, panic disorder with agoraphobia, and depression.  Doc. 11-10 at 4.

## C.   ALJ's Decision

In August 2014, the ALJ issued an unfavorable decision on Plaintiff's applications for benefits, applying the customary five step sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Doc. 11-3 at 13.  At step two, the ALJ found that Plaintiff suffered from the severe impairment of stage three chronic kidney disease.  Doc. 11-3 at 13.  In regard to her mental health, the ALJ noted that Plaintiff had "non-medically determinable impairments of depression, anxiety and panic attacks," but stated that there was "nothing about any of them in her medical evidence of record."  Doc. 11-3 at 14.  Additionally, the ALJ stated that a psychological abnormality had to be shown by "medical signs and laboratory findings" and that the evidence of record did not "provide a diagnosis, any treatment, or any other assessment or impression establishing or confirming depression, anxiety and panic attacks."  Doc. 11-3 at 14.

At step three of the sequential analysis, the ALJ determined that Plaintiff's impairment did not meet or equal the criteria for a presumptive finding of disability.  Doc. 11-3 at 13-14.  At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work.  Doc. 11-3 at 14.  As such, the ALJ concluded that Plaintiff could

perform her past work as an administrative clerk and personnel clerk and, on this basis, held that she was not disabled.  Doc. 11-3 at 17.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## III.  ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred in finding that her mental impairments did not qualify as medically determinable impairments ("MDIs") based upon a mistaken belief that an MDI must be shown by direct, objective empirical observation and verification.  Doc. 14 at 14-18.

Defendant responds that substantial evidence supports the ALJ's conclusion that the evidence was insufficient to confirm that Plaintiff suffered from an actual mental disorder because she only complained of anxiety or depression to Dr. Turner five times over the course of nine months.  Doc. 15 at 4-5, 7.  Further, Defendant notes that the medical evidence indicates that Plaintiff's thought content and affect were normal, and she did not undergo any psychological testing.  Doc. 15 at 5.  Defendant asserts that, even assuming, *arguendo*, that the ALJ should have found the alleged mental impairments to be medically determinable, the error is harmless because (1) the record conclusively establishes that Plaintiff experienced no work-related limitations attributable to a mental impairment; (2) Plaintiff cannot satisfy the Act's 12-

month durational requirement because her depression did not last that long; and (3) the ALJ decided this case at step four, not step two, thus rendering Plaintiff's step two arguments irrelevant.  Doc. 15 at 5-6.  Plaintiff replies that Defendant's harmless error analysis is wrong because, regardless of whether an impairment is found to be severe, the ALJ must account for both severe and non-severe impairments in determining a claimant's RFC.  Doc. 16 at 5-6.

A claimant's symptoms, such as pain, fatigue, or nervousness, will not be found to affect her ability to do basic work activities "unless medical signs or laboratory findings show that [an MDI] is present."[2]  20 C.F.R. §§ 404.1529(b), 416.929(b).  Only "acceptable medical sources," including physicians and psychologists, can opine as to the existence of an MDI.  20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1).  The claimant's impairment must result from a physical or psychological abnormality which "can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1508, 416.908.  Impairments must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," not just by the claimant's statement of symptoms.  *Id.*  The regulations define "signs," in relevant part, as "psychological abnormalities which can be observed, apart from [the claimant's] statements."  20 C.F.R. §§ 404.1528(b), 416.928(b).  These include "psychiatric signs," which are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, [and] thought . . ." *Id.*  Such signs also must "be shown by observable facts that can be medically described and evaluated." *Id.*  Thus, doctors' observations during examinations are, by definition, "psychological signs" that can support the existence of MDIs. 20 C.F.R. §§ 404.1528(b), 416.928(b).

---

[2] The Fifth Circuit clarified in *Randall v. Astrue,* 570 F.3d 651, 657-59 (5th Cir. 2009), that the question of the existence of an MDI is distinct from, and logically antecedent to, the question of its severity.  *See id.* at 657-58 (examining the Act and pertinent regulations and reasoning that both "make it plain that the two inquiries are distinct").

Here, two treating physicians examined Plaintiff, observed and reported that her mood appeared anxious and depressed, and issued her or continued her on prescription medication to treat those conditions.  Additionally, the state agency consulting doctors agreed that Plaintiff's depression and anxiety constituted MDIs and produced some limitations in her activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  Doc. 11-4 at 30-32.  Given the ALJ's disregard for evidence of depression and anxiety from these acceptable medical sources and seeming insistence on empirical, objective evidence of such impairments, it is apparent that the ALJ incorrectly applied the law.

This case is strikingly similar to *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 803 (N.D. Tex. 2009) (Lindsay, J.).  In that case, the ALJ found that the claimant's anxiety and depression were not MDIs because she had not been treated for those conditions.  598 F. Supp. 2d at 803.  The district court reversed, noting that while one of claimant's doctors did not treat her for anxiety and depression and was not a mental health care professional, he refilled her prescription medications on at least two occasions, which provided evidence in support of an MDI.  598 F. Supp. 2d at 806.  Additionally, two other doctors had noted the claimant's history of anxiety and a fourth doctor had diagnosed her with depression and anxiety.  *Id.*  The district court concluded that although the claimant had not presented laboratory findings of mental impairments or treatment records from a mental health professional, "the statements from these four doctors cannot be dismissed out of hand since all are acceptable medical sources who can provide evidence to establish the existence of [an MDI].  *Id.* (citing 20 C.F.R. § 404.1513(a)(1)); *see also Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 42111466, at *7 (N.D. Tex. 2008) (Fish, J.) (adopting finding that although claimant's depression was diagnosed by a family doctor, rather than a mental health professional, that was not cause to reject his opinion because he was a

licensed physician who could provide evidence to establish the existence of an MDI); *Stovall v. Astrue*, No. 11-CV-00107-SAA, 2013 WL 1873584, at *4-5 (N.D. Miss. 2013) (holding that the ALJ's disregard of the claimant's diagnosis of depression and treatment with prescription medication was reversible error because the ALJ applied an incorrect standard of severity at step two of the sequential analysis).

As noted above, Plaintiff was examined by two acceptable medical sources and found to have a depressed and anxious mood.  This corresponds to her review of systems, which was routinely positive for depression, anxiety, and fatigue.  The fact that Plaintiff's anxiety and depression were treated with prescription medications also suggests the presence of an MDI. *Scroggins*, 598 F. Supp. 2d at 806; *see also Lamb v. Barnhart*, 85 Fed. App'x 52, 57-58 (10th Cir. 2003) (holding that a diagnosis of depression and prescription for Zoloft were sufficient to establish the existence of an MDI).  In sum, the ALJ's determination that Plaintiff's depression and anxiety were not MDIs is not supported by substantial evidence or the applicable law.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir.1989).  In this case, the error at issue was not harmless because the ALJ was required to consider all MDIs, including those that were not severe, as well as all of the relevant medical and other evidence in the record.  *See* 20 C.F.R. §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3).  Moreover, Plaintiff presented some evidence that could support a finding that her depression and anxiety are severe impairments, namely (1) her diagnoses and treatment by two licensed physicians; and (2) her testimony about how her depression affects her daily activities insofar as she tries to stay inside her apartment all the time because she is afraid to

leave and fears having a sudden panic attack.   Doc. 11-3 at 46-47.   As such, reversal and remand
is warranted.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

**SO RECOMMENDED** on December 21, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE